FILED
JAN 25 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KIMBERLY SHEPHERD, | CV.09-6022-PK |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security<br>Defendant. | |

PAPAK, Magistrate Judge:

     Plaintiff Kimberly Shepherd ("Shepherd") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Following a careful review of the record, and for the reasons set

Page 1 - FINDINGS AND RECOMMENDATION

forth below, the Commissioner's decision should be affirmed.

## BACKGROUND

Kimberly Shepherd was born on June 18, 1969. Tr. 102. She completed tenth grade. *Id.* Shepherd's past relevant work includes school bus driver, home health aide, institution attendant, and retail seller. *Id.* at 39. She last worked in May 2004. *Id.* at 129.

Shepherd protectively filed for DIB and SSI benefits on July 23 2004, alleging a disability onset date of May 21, 2004, based on back problems, fibromyalgia, Hepatitis C, depression, and drug abuse. *Id.* at 30, 60. Shepherd was insured through September 30, 2008, which was beyond the close of the period at issue. *Id.* at 30. The claims were denied initially and on reconsideration. *Id.* On August 7, 2007, a hearing was held before an Administrative Law Judge ("ALJ"), who took testimony from Shepherd, who was represented by an attorney, and from a vocational expert. *Id.* On October 26, 2007, the ALJ issued a decision finding Shepherd not disabled. *Id.* at 30-41.

The ALJ engaged in the required five-step "sequential evaluation" process when he evaluated Shepherd's application. *See* 20 C.F.R. § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At step one, the ALJ concluded that Shepherd had not engaged in any substantial gainful activity since her alleged disability onset date of May 21, 2004. Tr. 32. At step two, the ALJ determined that Shepherd has the following severe impairments: fibromyalgia, depression, and drug dependence in short-term remission. *Id.* The ALJ found that Shepherd's Hepatitis C, cervical impairment, and carpal tunnel syndrome were non-severe impairments. *Id.* at 33.

At step three, the ALJ found that none of Shepherd's impairments were the equivalent of

Page 2 - FINDINGS AND RECOMMENDATION

any of the listed impairments enumerated in 20 C.F.R. § 404, Subpt. P, App. 1. *Id.* The ALJ then conducted an assessment of Shepherd's residual functional capacity ("RFC"). Specifically, the ALJ found that:

> [Shepherd] has the RFC to perform light work, as defined by the regulations. She has fibromyalgia that limits her to lifting and/or carrying frequently up to 10 pounds and occasionally up to 20 pounds. She is limited to sitting, standing, and walking each for six hours total in an eight-hour period. Her pushing and pulling abilities are limited only by the above delineated weights. Her depressive and drug dependence in short term remission make it difficult to focus on difficult or complex tasks beyond two hours, difficult to maintain attention and concentration when near others and difficult to have more than brief interaction with co-workers.

*Id.* at 34. The ALJ further concluded that Shepherd's account of her symptoms was not fully supported by the objective evidence, and, accordingly, the ALJ found Shepherd not fully credible based upon the medical and opinion evidence in the record. *Id.* at 39.

At step four, the ALJ concluded that Shepherd is unable to perform any of her past relevant work, either as generally performed in the nation or as she actually performed those jobs. *Id.* At step five, the ALJ found that considering Shepherd's age, education, work experience, and RFC, she was capable of performing other work that exists in significant numbers in the national economy. *Id.* at 40. The ALJ relied upon the objective Vocational Expert's ("VE") testimony that Shepherd could perform the requirements of the following unskilled, light exertion occupations: motel cleaner, laundry folder, and laundry sorter. *Id.* Based on these findings, the ALJ concluded that Shepherd was not disabled. *Id.*

The Appeals Council denied Shepherd's request for review on November 13, 2008, making the ALJ's decision the Commissioner's final decision. *Id.* at 6-8. Shepherd filed for review of the final decision in this court on January 20, 2009.

Page 3 - FINDINGS AND RECOMMENDATION

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008.) The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The reviewing court may not substitute its judgment for that of the Commissioner. *Robbins*, 466 F.3d at 882. Finally, "the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti*, 533 F.3d at 1038 (citation omitted).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In determining a claimant's RFC, an ALJ must consider all of the relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883 (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 at *5); 20 C.F.R. §§

Page 4 - FINDINGS AND RECOMMENDATION

404.1545(a)(3), 416.945(a)(3); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

## DISCUSSION

Shepherd contends that the ALJ erred in concluding that she had the RFC to perform unskilled light work. The RFC assessment describes the work-related activities a claimant can still do on a sustained, regular and continuing basis, despite the functional limitations imposed by her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); SSR 96-8p. The ALJ must reach the RFC assessment based on all the relevant evidence in the case record, including medical reports and the effects of symptoms, including pain, that are reasonably attributable to medically determinable impairments. *Robbins*, 466 F.3d at 883. The ALJ, however, need not incorporate limitations identified through claimant testimony or medical opinions that the ALJ permissibly discounted. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

Here, Shepherd claims that the Commissioner erred by failing to consider evidence submitted to the Appeals Council, which if properly considered, would have changed the outcome of the decision because it related to the severity of her symptoms. Shepherd further asserts that the ALJ erred in formulating her RFC by failing to give proper weight to the opinions of her treating and examining physicians. Finally, Shepherd alleges that in light of the alleged errors in his assessment of Shepherd's RFC, the ALJ failed to meet his burden at step-five of the sequential evaluation process.

## I.    Consideration of New Evidence

Shepherd asserts that the Commissioner erred in affirming the ALJ's decision because the ALJ failed to consider all of her impairments in calculating her RFC. Specifically, Shepherd asserts that the Commissioner erred by failing to consider the new evidence submitted to the

Page 5 - FINDINGS AND RECOMMENDATION

Appeals Council, which presumably provides support for Shepherd's assertion that she suffers from Hepatitis C, cervical spondylosis, and carpal tunnel syndrome, which the ALJ determined to be non-severe at the time he rendered his opinion.

Shepherd seeks to admit several pieces of evidence for the court's consideration. Shepherd submitted a May 19, 2008 letter and progress note from Dr. Atif Zaman, M.D., M.P.H., Director of the OHSU Hepatology Clinic which diagnoses Shepherd with chronic Hepatitis C infection, fibromyalgia, and carpal tunnel syndrome. Tr. 21-24. She also presented a letter from Dr. Lance K. Cheung, M.D., regarding a July 7, 2008 examination, offered to support her complaints of chronic pain from cervical spondylosis, radiculopathy, and carpal tunnel syndrome. *Id.* at 11-14. Finally, Shepherd offered Dr. Cheung's electrodiagnostic study report from August 15, 2008, which concludes that there is electrodiagnostic evidence consistent with bilateral moderately severe carpal tunnel syndrome. *Id.* at 15-20.

"Remand for the consideration of new evidence is appropriate if a claimant presents evidence that is material to determining disability, and there is good cause for failure to produce the evidence earlier." *Wainwright v. Secretary of Health and Human Services*, 939 F.2d 680, 682 (9th Cir. 1991) (citation omitted); *see also* 42 U.S.C. §405(g). New evidence is material if it bears directly and substantially on the matter in dispute, and if it has a reasonable possibility of changing the outcome. *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001). It is well established that the good cause requirement is not met "simply by obtaining a more favorable report from an expert witness once [the] claim is denied." *Wainwright*, 939 F.2d at 682 (quoting *Clem v. Sullivan*, 894 F.2d 328, 332 (9th Cir. 1990)). Rather, the claimant "must establish good cause for not seeking the expert's opinion prior to the denial of [the] claim." *Clem*, 894 F.2d at

Page 6 - FINDINGS AND RECOMMENDATION

332 (citing *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985)); *see also Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989) (physician's "opinion [found] all the less persuasive since it was obtained . . . only after the ALJ issued an adverse determination").

Here, the new evidence submitted offers support for Shepherd's complaints of symptoms of Hepatitis C, cervical spondylosis, and carpal tunnel syndrome, which the ALJ found non-severe. However, the new evidence is not material because even assuming it establishes that these impairments were severe, it does not have a reasonable possibility of changing the outcome. Even without the new evidence, the ALJ found in favor of Shepherd at step two, permitting the claim to go forward to further steps of the sequential disability analysis. As discussed below, the ALJ considered the limitations caused by Hepatitis C, cervical spondylosis, and carpal tunnel syndrome in formulating Shepherd's RFC. Thus, any error in failing to consider these impairments as severe was harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (an ALJ's step two omission was harmless where the ALJ proceeded beyond step two in the sequential analysis); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (any error in omitting an impairment from the severe impairments identified at step two was harmless where step two was resolved in claimant's favor).

Most importantly, Shepherd has not made the required showing of good cause, and the record suggests no reason for concluding that Shepherd could not have obtained the proposed medical opinions prior to the ALJ's decision. Especially relevant is the fact that at the hearing, Shepherd testified that she had recently seen pain specialist Dr. Pylman, and was scheduled at the OHSU Hepatology Clinic for the following month. Curiously, Shepherd's new evidence is not from these appointments, and the record contains no information as to why Shepherd did not

Page 7 - FINDINGS AND RECOMMENDATION

submit these records prior to the ALJ's decision. Instead, Shepherd seeks to admit evidence from appointments that occurred at least six months after the ALJ released his decision, with no showing of good cause for her failure to produce the earlier records or to justify why she could not have submitted the new evidence earlier.

The ALJ gave Shepherd ample opportunity to submit a complete picture of her medical history, postponing the hearing twice so that Shepherd could submit all of her current medical reports. Tr. 358, 368. At the hearing on August 7, 2007, the ALJ discussed the importance of the submission of Shepherd's records from her appointments with Dr. Pylman and at OHSU. *Id.* at 370. At the close of the hearing, the ALJ left the record open for the very purpose of allowing Shepherd to submit the records relating to her pain and Hepatitis C. *Id.* at 407-408. The ALJ did not issue his opinion until October 26, 2007, but Shepherd never submitted any additional information. *Id.* at 38. The record clearly demonstrates that Shepherd was given every opportunity to submit additional medical records, yet failed to do so. She has not provided a showing of good cause for this failure. Accordingly, the new evidence will not be considered.

For the foregoing reasons, the Commissioner's conclusion should not be disturbed on the basis of the new evidence submitted for the court's consideration.

## II. Opinions of Treating and Examining Physicians

The ALJ is responsible for reviewing the evidence and determining the weight to be given to opinions from medical practitioners. *See* SSR 96-6p. In weighing a claimant's medical evidence, the ALJ generally affords enhanced weight to the opinions of the claimant's treating or examining physicians. *See* 20 C.F.R. § 404.1527(d)(2). "Those physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those

Page 8 - FINDINGS AND RECOMMENDATION

physicians with lesser relationships." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). Moreover, several factors determine the weight the ALJ should give to a physician's opinion, including the length of the treatment relationship and frequency of examination, the amount of evidence that supports the opinion, the consistency of the medical opinion with the record as a whole and the physician's specialty and understanding of the disability program. *Orn v. Astrue*, 495 F.3d 625, 631-632 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)).

In consequence, an uncontradicted treating or examining physician's opinion may only be rejected for "clear and convincing" reasons supported by evidence in the record, and a contradicted treating physician's opinion may only be rejected for "specific and legitimate" reasons supported by evidence in the record. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). When "the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating of examining physician, we credit that opinion 'as a matter of law.'" *Lester*, 81 F.3d at 834 (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989)).

Here, Shepherd argues that the ALJ failed to give proper consideration to the limitations identified by her treating and examining physicians. Specifically, Shepherd asserts that the ALJ improperly rejected the physical limitations set forth by examining physician, Dr. Raymond Nolan, M.D., Ph.D. Shepherd also contends that the ALJ did not fully account for the observations of Dr. Geraldine Somera, M.D., a treating physician. Shepherd also appears to claim that the ALJ erred by failing to adequately develop the record when he failed to obtain additional medical records after the close of the hearing. Drs. Nolan and Somera's opinions are

Page 9 - FINDINGS AND RECOMMENDATION

inconsistent with the state agency reviewing physician, Dr. Sharon Eder, M.D., who indicated that Shepherd is capable of performing and sustaining light exertion activities. Tr. 263-64, 268. Thus, I review the ALJ's decision to determine whether he set forth specific and legitimate reasons to reject the opinions of Shepherd's examining and treating physicians, and whether substantial evidence supports those reasons.

### A.     Examining Physician Dr. Raymond Nolan

The ALJ rejected Dr. Nolan's opinions because they were "unsupported by his own objective findings," and there was "no medical foundation to support" the limitations he ascribed to Shepherd. Tr. 37. An ALJ may properly discount a physician opinion based upon discrepancies between the opinion and the physician's treatment notes. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Here, the ALJ articulated specific and legitimate reasons for his decision to reject Dr. Nolan's opinion regarding Shepherd's limitations. The ALJ found that Dr. Nolan's standing and walking limitations were overstated, in light of his findings that Shepherd has "full equal orthopedic and neurologic functioning in the lower extremities, including normal gait." Tr. 37. Similarly, the ALJ rejected Dr. Nolan's opinion that Shepherd should be limited to only occasional bending, twisting, turning, pushing, and pulling because such an opinion was at odds with his own objective findings that Shepherd had full motion of the lumbar spine and all extremities. *Id.* The ALJ also pointed out that the objective medical evidence, in the form of lumbar spine x-rays did not support Dr. Nolan's physical limitations. *Id.* The ALJ further rejected Dr. Nolan's opinion that Shepherd "might" have problems with her wrists or hands because it was possible that she could have carpal tunnel syndrome. *Id.* The ALJ gave this

opinion no weight because Dr. Nolan did not find any objective evidence of carpal tunnel syndrome to support such a conclusion, and the medical evidence available to the ALJ at the time he rendered his decision established that there was no severe carpal tunnel impairment. *Id.*

Substantial evidence in the record supports the ALJ's finding that Dr. Nolan's opinion was inconsistent with itself and the medical record. Dr. Nolan's report indicates that Shepherd was diagnosed with Hepatitis C in 2002, but Shepherd's treating physician Dr. Somera noted that there was no clear documentation of Shepherd's report that she has such a history. Tr. 233, 320. Dr. Nolan's neuromuscular examination results were normal, indicating that Shepherd could go from sitting to standing without difficulty, that she had a normal gait, could walk on toes and heels, hop on either foot, and perform a squat rise maneuver. Tr. 234. He also found that her lower extremity range of motion and sensory testing was normal. *Id.* A lumbar spine x-ray on November 10, 2004 revealed only mild curvature and degenerative changes. *Id.* at 236. It was not until March 2007 that Shepherd reported "shooting pains" from her neck, long after Dr. Nolan's December 2004 evaluation. *Id.* at 325. The record contains only isolated objective signs of carpal tunnel syndrome in June 2006 and July 2007, several years after Dr. Nolan's examination. *Id.* at 289-290, 311. The record further undermines Dr. Nolan's opinion because no other examining or consulting physicians have documented any objective signs of carpal tunnel syndrome, and Shepherd has never reported severe symptoms such as dropping objects with her hands, and has used her wrist splints inconsistently at best. Tr. 232, 234, 280, 296-297. The ALJ's rejection of Dr. Nolan's opinion was permissible because it was not supported by any objective evidence at the time of his examination.

The ALJ cited specific and legitimate reasons to reject Dr. Nolan's opinion. Substantial

Page 11 - FINDINGS AND RECOMMENDATION

evidence in the record supports those reasons. Accordingly, I conclude that the ALJ's rejection of Dr. Nolan's opinion was permissible.

### B.     Treating Physician Dr. Geraldine Somera

The ALJ dismissed Dr. Somera's opinion regarding Shepherd's limitations and the severity of her impairments by noting specific contradictions between the questionnaire responses and her treatment notes. In so doing, the ALJ cited specific and legitimate reasons for his decision to reject Dr. Somera's opinions. The ALJ found Dr. Somera's opinion that Shepherd was limited to less than sedentary exertion and would likely miss more than three work days per month due to her history of Hepatitis C and fibromyalgia inconsistent with her treatment notes because just one month prior to filling out the questionnaire, Dr. Somera noted that Shepherd's fibromyalgia and Hepatitis C liver enzymes were "quite stable." Tr. 37-38. Additionally, the ALJ found that the only objective medical evidence that supports a finding of abnormal liver functioning was from a December 2004 lab panel, which was likely due to Shepherd's admitted use of methamphetamine and marijuana from January through September 2004. Tr. 38. Finally, the ALJ noted that there was no evidence in the record that Shepherd ever received an evaluation or treatment by a liver specialist which could establish symptomatic Hepatitis C. *Id.* The ALJ held the record open to give Shepherd the opportunity to submit additional medical records relating to Hepatitis C symptoms and limitations, but no records were submitted. *Id.*

Substantial evidence in the record supports the ALJ's finding that Dr. Somera's opinion was inconsistent with her treatment notes and the medical record. On December 17, 2004, Dr. Eder, a DDS internist, completed a physical RFC assessment, noting that while Shepherd reported a history of Hepatitis C, her abdominal exam was normal, she had no hepatomegaly, she

Page 12 - FINDINGS AND RECOMMENDATION

exhibited no significant signs or symptoms of liver dysfunction, and did not require treatment for liver disease. Tr. 263. Dr. Martin Kehrli, M.D., reviewed the evidence on file and affirmed Dr. Eder's assessment on February 28, 2005. *Id*. at 269. The medical record indicates that as of March 2007, Shepherd was taking no medications whatsoever. *Id*. at 306. An abdominal ultrasound of the liver performed on March 28, 2007 was within normal limits, and comprehensive metabolic and urinalysis panels revealed no adverse structural liver changes or abnormal liver function values. *Id*. at 320-321. While Shepherd had a positive laboratory panel for Hepatitis C in April 2007, she has exhibited no objective signs or complaints of symptoms related to Hepatitis C. *Id*. at 321, 335-336.

Shepherd asserts that the ALJ's conclusion that her impairments could not have been that severe since she never received specialized treatment is flawed because Shepherd did indeed see two specialists, and the ALJ failed to mention that in his findings. An ALJ may consider treatment as "an important indicator of the intensity and persistence of [claimant's] symptoms" 20 C.F.R. 416.929(c)(3). As discussed more fully below, the ALJ had no duty to supplement the record by obtaining additional medical records. At the time the ALJ made his decision, the record did not include any evidence that Shepherd had been referred to a liver specialist or had otherwise received any specialized treatment. The ALJ's discussion of an apparent lack of need for specialized treatment was permissible when considering the severity of her alleged symptoms.

The ALJ cited specific and legitimate reasons to reject Dr. Somera's opinion, and substantial evidence in the record supports those reasons. Consequently, I conclude that the ALJ's rejection of Dr. Somera's opinion was not improper.

/ / /

### C. Subsequent Supporting Medical Evidence

Finally, Shepherd claims that had the ALJ considered additional evidence, then the outcome would have been different because the additional evidence supports the opinions of Drs. Nolan and Somera. Specifically, Shepherd asserts that the ALJ failed to obtain the treatment notes of a pain specialist, Dr. Pylman, and the records from the OHSU Hepatology Clinic.

It is well established that an ALJ has a "special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel." *Mayes*, 276 F.3d at 459 (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). However, the duty to further develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Id.*, 276 F.3d at 459-460; *see also Smolen*, 80 F.3d at 1288 (ALJ erred by rejecting physician opinion for lack of foundation instead of further developing the record so he could properly evaluate the opinions). The ALJ may "discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan*, 242 F.3d at 1150. The ALJ does not have a duty to recontact doctors, so long as the evidence in the record is adequate to make a determination regarding the claimant's disability. *Bayliss*, 427 F.3d at 1217.

At the hearing on August 7, 2007, the ALJ discussed that he wanted the records from Dr. Pylman, a pain specialist Shepherd was referred to by Dr. Aleksandar Curcin, M.D., and from Shepherd's upcoming appointment at the OHSU Hepatology Clinic. Tr. 340, 370. At the time of the hearing, Shepherd had already seen Dr. Pylman, but had yet to be seen at OHSU. *Id.* at 370.

The ALJ made it clear that he could only request the records from OHSU once Shepherd had actually gone to an appointment, and that it was her responsibility to make sure that she notify the ALJ after her appointment, or request the records herself afterwards. *Id.* The ALJ commented that the OHSU records were important to the Hepatitis C issue because the current records presented an "unclear picture." *Id.* at 368. At the close of the hearing, the ALJ again discussed the submission of the additional records. *Id.* at 407-408. At that time, Ms. Shepherd's attorney informed the ALJ that Dr. Pylman's records were already sent and billed to her, and that the ALJ, "may not want to be billed for the same thing." *Id.* at 408-409. While not entirely clear, it appears as though Ms. Shepherd's attorney agreed to submit Dr. Pylman's records to the ALJ. Those records were never submitted to the ALJ prior to his written decision, nor were they submitted to the Appeals Council. *Id.* at 11-24, 38. The ALJ noted that no additional records had been submitted after the hearing, even though he held the record open. *Id.* at 38.

Here, the ALJ, with support in the record, found the evidence adequate to make a determination regarding Shepherd's disability. While the ALJ indicated that it might have been helpful to have information from a specialist that could establish symptomatic Hepatitis C, he found the existing record sufficient to make a determination of Shepherd's disability, as the Hepatitis C was but one aspect of her alleged inability to work. In formulating his opinion, the ALJ cited to all the relevant objective medical evidence, as well as the opinions of several different physicians. Most importantly, the ALJ left the record open after the hearing, and gave specific instructions to Shepherd and her counsel regarding submission of the relevant records from Dr. Pylman and the OHSU Hepatology Clinic. At the hearing, Shepherd indicated that her appointment at OHSU was in September. The ALJ did not issue his decision until October 26,

Page 15 - FINDINGS AND RECOMMENDATION

2007. As discussed in detail above, Shepherd has provided no basis for her failure to submit the records. The ALJ satisfied his duty to fully and fairly develop the record. Accordingly, remand or reversal on this basis is unwarranted.

### III.   Step Five Burden

Finally, Shepherd challenges the hypothetical posed to the VE on the basis that it did not include all of her limitations, namely carpal tunnel syndrome and cervical neck and shoulder pain. At step five, the Commissioner must show that there are a significant number of jobs in the national economy that the claimant can perform, given her RFC. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999); *Andrews*, 53 F.3d at 1043. The Commissioner can satisfy this burden by eliciting the testimony of a VE regarding what jobs the claimant would be able to perform, given his or her RFC. *Id*. An ALJ must propose a hypothetical that sets forth all the reliable limitations and restrictions of a claimant that are supported by substantial evidence. *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995). The hypothetical must be "accurate, detailed, and supported by the record." *Tackett*, 180 F3d at 1101. "If a hypothetical fails to reflect each of the claimant's limitations supported by "substantial evidence," the expert's answer has no evidentiary value." *Osenbrock v. Apfel*, 240 F.3d 1157, 1167 (9th Cir. 2001) (citing *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984)).

For the reasons given previously, Shepherd's challenges to the ALJ's evaluation of the evidence cannot be sustained. The ALJ elicited testimony from the VE based on the RFC assessment and was not required to incorporate additional limitations he found unsupported by the record. *Osenbrock* 240 F.3d at 1163-65 (9th Cir. 2001). The VE testified that a person Shepherd's age with her education, work experience, and RFC could work as a motel cleaner,

laundry folder, and laundry sorter. Tr. 402-403. Relying on this testimony, the ALJ found that Shepherd could perform significant numbers of jobs in the national economy and, thus, was not disabled.

The ALJ's hypothetical was proper because the ALJ considered all the evidence and framed his vocational hypothetical based upon the limitations supported by the record as a whole, taking into account Shepherd's physical and functional limitations. The hypothetical limitations reflected reasonable conclusions and were based upon reliable limitations and restrictions supported by substantial evidence. Consequently, reversal or remand is not warranted.

## RECOMMENDATION

For the reasons set forth above, the Commissioner's decision should be AFFIRMED and judgment should be entered dismissing this case with prejudice.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 25th day of January, 2010.

Paul Papak
United States Magistrate Judge

Page 17 - FINDINGS AND RECOMMENDATION